20-3147. Council, Mr. Goheen, you may proceed. Thank you, Your Honor, and before I begin, I'm getting a little bit of feedback. If that's on my end, I apologize. I can hear you guys well, but there is a little bit of feedback. We'll do our best. I apologize. May it please the court. My name is Greg Goheen, and I represent the appellate in this case, Ms. Carly Fine. Ms. Fine is a former high school dance coach and instructor at a public high school in the state of Kansas. The appellee and the plaintiff in the case is one of her former students and one of the dancers on the dance team at the high school, and I want to begin by talking a little bit just about what this case is and what this case is not. This case was filed by a plaintiff asserting that her rights have been violated under the Equal Protection Clause and that she was discriminated against based upon her race by my client, Ms. Fine, in the course of her work as the dance coach and in connection with her participation on the dance team. Now, there is no retaliation claim against my client in this case. This is strictly a race discrimination claim, and that has some materiality, I think, as it relates to the cause and the claims being pursued in the allegations. At the trial court, we moved for summary judgment in this case based upon qualified immunity, and as part of that qualified immunity analysis, two things are required. One, that the material facts, which are not genuinely disputed in this case, and I'll go over those violations under 1983 of the plaintiff's First Amendment rights to be free from race discrimination under the Equal Protection Clause. The second is whether the actual actions taken by my client or alleged to have been taken by my client violate any clearly established law that would show that under those legal standards that the rights of the plaintiff have been violated in any way, form. Generally, very generally, and we covered this in the brief, what happened in this case is Ms. Fine, as the coach of the dance team for a couple of years, was the coach for the plaintiff and several other individuals. There was 14, 15 members on the dance team depending on the year. There is no evidence whatsoever that Ms. Fine, my client, ever discriminated against or prohibited any participation by any activity involving the dance team during the time she served as the dance coach. What did happen is in May of the plaintiff's senior year, the plaintiff tried out for and made the team at a college dance squad. At the same time that happened, another individual who had been a former member of the dance team and a friend of the coach had tried out for the same team and not made the team. My client sent a text message to another individual who's a friend of hers and a friend of the other individual who did not make the team, and in the context of that text message made comments that were inappropriate and ill-advised in terms of a connection of suggesting that in rather inappropriate language that the team at the university because of a race. That text was in a private message. It was not intended or directed at the plaintiff in the case, but unfortunately, the plaintiff was able to read and view this message, and as a result of reading and viewing that message, took a screenshot of it, provided that to the administration at the school. The next morning, which was May 2nd, the school administration met with my client. They relieved her of her duties as the dance instructor and dance coach. They ended her employment with the district. That's stipulated fact in this case, and they then subsequently met with the dance team. Well, counsel, they didn't end her employment immediately, did they? I mean, she was still employed by the district in the ensuing days. Isn't that correct? It is not correct. The distinction that plaintiff's counsel is trying to draw in that regard is whether she was terminated from her employment or whether the district simply paid out her contract. There's no question she was relieved from her duties on that date and that she no longer served as the dance coach. The dancers were informed of that. The dancer's parents were informed of that. There was a new coach in place that same morning who took over the duties and responsibilities. So, if you want to suggest, and this is what plaintiff's main point is, that there was no termination of her employment, and I think that's a fair characterization. We're not disputing there was no termination. Frankly, the school district was concerned about whether a termination would violate First Amendment rights of my client, and so that's why there was no termination. But be that as it may, there's no question or dispute that she was no longer serving as the dance coach. I understand that she's not serving as the dance coach, but did she remain employed by the school district? Our position is that she did not remain employed. She was no longer a disputed fact. That's not how I understand the way the plaintiff sees things. No, I don't think the plaintiff sees it that way. I don't think it's a disputed fact. I think it's a semantics debate about whether somebody's relieved of duties and told they're no longer going to serve in any capacity, is still employed or not. She'd already been paid her money. She'd been completed her responsibilities as the coach, other than a few of the remaining activities, and she was told she could no longer participate in those activities. So, you mentioned there was a stipulation. What did your stipulation say? I mean, what were the words of it? I don't have the stipulation directly in front of me. I know it is cited in the brief specifically, but I believe the stipulation was that her employment ended on that day. Okay. Can I ask a question? So, basically, what you're saying is her employment was terminated, and so this fine was basically acting as a private actor. That's correct. And so, in this case is here on interlocutory review on qualified immunity, correct? And qualified immunity is available only to public officials, right? Correct. So, how can she invoke qualified immunity if she's a private actor? There are cases involving, say, private prison officials or doctors in which there's an argument that they are acting under color of state law. They are acting in a public capacity. Now, here, the anomaly is you're taking advantage of interlocutory review that is available only to public officials under Mitchell versus Forsyth, and you are saying, but she's not a public official. That seems quite anomalous. Yeah, it is an interesting point. Frankly, I don't think there's much authority on it one way or the other as far as that goes. The issue, as I see it, Judge, is that either she remains a public official and is therefore entitled to qualified immunity, or alternatively, and again, this would be as a matter of law, if she is no longer considered a public official at that point, then she can't act in a capacity under color of state law, and the claim fails on the merits. And you might win on the merits when there's a final order. Judge Hosner wrote an opinion for the Seventh Circuit that said if the defendants were not acting under color of state law, that is as officials, they are not entitled to official immunity. Official immunity is for officials. There's a separate Seventh Circuit opinion, Rambo versus Daley, that, as I read it, would essentially preclude interlocutory review for qualified immunity in a situation here where the defendant is disavowing that they are acting under color of state law or as a state actor. You might very well win, but we are a court of limited jurisdiction, and I don't know how we can interlocutory jurisdiction of qualified immunity if you are saying she was fired, and she had no public role. But the argument of the plaintiff is that she continued to have a public role, and to the extent she continued to have a public role, I understand, but to the extent that she continued to have a public role, our argument would be that as a former employee, with whatever scope of color of state law that carries with it, which there could be an argument made that she would have some continuation of authority, which I understand is what the plaintiff's argument is, that that would carry with it this qualified immunity argument, and then you get into the issue of to what extent can a former official still activate or carry out duties under color of state law, and would my client be entitled to qualified immunity on that basis? If she's being alleged to continue to be acting as a public official, which is the under color of state law, and qualified immunity is available to her, so as a former official, assuming she does carry with her some capacity or some ability to still act under color of state law, what are the delineation of what that looks like, and is that clearly established as to what she can or can't do in that capacity as a former employee? That's really where this gets down to it. I agree with you, if she's absolutely not an employee any longer, and we all agreed on that, and there was no allegation of continuation of color of state law past that point, then this would be not a qualified immunity case in that sense, but because the allegation is that she continued to act under color of state law after her separation from employment, whatever label we want to put on that, that she's carrying some apparent authority with her, which is I understand what the plaintiff's argument is, then we have to look at what that apparent authority potentially could be, viewing that in the light most favorable to the plaintiff, and say under that circumstance, my client's entitled to still assert qualified immunity, and then we look at what the law is, and see what is clearly established and what is not clearly established for an individual in that gray area. So the district court held, or at least assumed, didn't it, that your client was acting under color of state law? Correct. So you want to appeal that along with the qualified immunity? I do, but I think the issue is twofold, because that sort of gets into the first prong of the qualified immunity defense, is there has to be, the facts have to establish that had X, Y, Z happened, that that would justify or create a cause of action under the recognized law. So that's where that falls into into play as in that first component of it. Factually, I have to defer to what the allegations are established by evidence like most favorable to the plaintiff. So that's the standard as I understand it. And so really, then we kind of shift over to this next. I'm sorry to corrupt you, Mr. Goheen. No, you're fine. You're fine. But I had a quick question. Nobody really addressed this, but it was a question for me. Under color of state law, you are treating that as an element of the equal protection clause. As I understand it, under color of state law is terminology that never understood under color of state law to be an element of the 14th Amendment. Now, there are certainly a lot of Supreme Court and 10th Circuit cases that identify state action as an element of the 14th Amendment. But state action is a distinct idea. It's a distinct doctrine from a statutory element. So I don't understand how, whether you're acting under color of state law or not, really has any bearing on whether there is a constitutional violation or whether even there is a clearly established constitutional violation. That involves state action, and nobody's really talked about state action. Let me answer your question, then I would like to reserve the rest of my time for rebuttal if that's possible. The issue is, is that the section, it's an element section 1983, and there's no vehicle for plaintiffs to pursue a cause of action for equal protection or otherwise against my client without going through section 1983. So that's where it comes into play. And qualified immunity would be equally applicable to that as a component of what the standard that would have to be met for from a legal standpoint. With that, I would like to move on. You'll have to unmute your microphone. There you go. There we go. Thank you. I'm Marie Gogol, and I represent the respondent in this case, Camille Sturdivant. I'm going to start with a reference specifically to the appendix of this case, 161, where Dr. Dillon, who's the HR director, is asked, did you tell Ms. Vine that she was terminated before the end of the school year? Answer, I never said she was being terminated. That is in the record. That's what the part of the judge relied upon in coming to the conclusion that there is a, at a minimum, there's issues of fact that are beyond the jurisdiction of this court to reexamine with respect to whether or not there was color of state law. In addition to that testimony, there was also an email where Ms. Vine wanted to know from the school district, I think it was initially sent to the principal and the the HR director answered that question that Ms. Vine had and the question she had related to, you know, what's my status? And it's on the appendix at 230, the appendix at 233 and 243. It was asked on May 2nd. It was answered on May 8th. And it says, as stated in the meeting, referring to a meeting of May 2nd of 2018, you were not terminated. I think it's very clear that there's issues of fact relating to the scope of employment here and that the district courts should be affirmed with respect to its conclusions that there was sufficient evidence to show an agency relationship continued. Now, Ms. Vine want to know about it and so did the school district, both parties had an interest in examining what the relationship was at the time and both parties saw had an interest and benefit in seeing that the relationship be continued. There is something anomalous and something unjust about allowing these parties to run away from the conclusions or the conclusions that were apparent from the relationship at the time in looking at what their responsibilities are and what their agency relationships are with respect to the actions of Ms. Vine that she engaged in that resulted in constitutional violations to my client. Okay, so go ahead, Bob. Sorry, there's Judge Baccarat. Go ahead. Judge Parsons, you go ahead. You go ahead. Sorry, I was just going to probe that a little bit. So, whether she was an employee or not, why does it really matter for under federal or state law? Because she had been, even you can see that she had been relieved of her responsibilities as a coach. The school had arranged, I think, for two other individuals to take up that role. Now, there's a question about whether they actually ever took up that role, but she had no more capacity to do anything other than the fact that she was still under the payroll than someone that cleans the school. She had no actual authority to act as a coach. And so, if we're looking at it from an agency standpoint, she really had no authority. Judge Baccarat, the district court found expressly and based upon 10th Circuit law in the Hohala versus Chavez case that Ms. Vine acted under apparent authority. So, even if she didn't have express authority, she acted within the scope of her apparent authority because this is a situation where there was a directive to boycott my client. And that directive was sent to one of the teammates. That's like using a match to start a fire and starting that fire and then thinking you can run away from it. But Ms. Well, counsel, counsel, let me ask you a couple. Let's explore this a little bit. So, your client understood that she was no longer in a position of authority. Your client had been advised by the school that she was no longer the coach that she'd been let go. Isn't that right? I don't know that that's correct, your honor. I mean, if I represented to you that in your client's deposition, she said something. The question was, and the next day you learned that Coach Fine had been removed as coach, correct? She says, correct. How did you learn about that was the next question. Murphy came into our practice that next morning and told the whole team. So, you don't have any evidence, do you, that anyone on the team thought or believed that she still had authority over them? That's not your position, is it? It's our position that Ms. Fine continued to act in the role of the coach and that she was assisted by what took place in the actual meeting where what she was told is that, and it's in an email on the appendix of 233 and 243, she was told, we requested that you not attend any on-campus end-of-the-year activities with the Dazzler dance team. Now, Ms. Sturdivant wasn't present for that meeting, but that's what the Director of the Human Resources said in relation to the authority that was given. Now, what did Carly Fine do? She took the opportunity to use off-campus events, admittedly, in communication with all of the parents with whom she communicated of this Dazzler's dance team, and these communications was relied upon by the District Court. The District Court talked about those. They're on appendix 217 to 250 of the brief. So, she started this directive to boycott, and then she stood over it and made sure that it happened. She's asking people about whether or not one of the teammates, her name is Pandy, is Team Camille. She is making sure that the directives about the boycott, that when my client goes to, when my client dances in the dance routine, nobody's to give her flowers. She makes sure that these communications among the parents, excuse me, among Fine and the parents, they're taking place, and Ms. Fine is not just an inactive participant. Well, Ms. O'Connell, could I just ask you about the boycott text in particular? This was a text exchange with her sister, correct? Her sister, who is also a teammate? Right. Her sister, who was on the team, and it was in the context of a discussion about flowers at the performance. Isn't that what they were discussing in the text? That's what it started as, but based upon the conduct that occurred afterwards, the District Court concluded it was more than just that, because she was on the boycott. That's where I'm going. So, we have a boycott text about presenting flowers, and what I'm interested in is, why is it reasonable to conclude based on that text that that caused everything else, that that caused Ms. Sturdivant not to be invited to the team meeting, or to the banquet, or not going to the first session of the dance team class? Wasn't it just a text about presenting flowers between Ms. Fine and her sister? Judge Matheson, if we get to go to court, I'm sure that's what the defendant's going to argue, Okay, well, that's good. What are you going to say in response? We're going to talk about what happened. We're going to talk about, there's this text message, and this text message happens on May 2nd. This is right in line, time-wise, temporal-wise, which is something that, on summary judgment, you have the right to rely upon, the temporal nature of what happened. The next day, there was a performance, and there was supposed to be a team meeting. Is there, and we talked about these two coaches who were supposed to step in there, and the court made a point that there was no evidence that these folks did step in, and in fact, the plaintiff's evidence was that they didn't step in. Was there coaches to talk about a team meeting? I mean, we talked about, you know, what happens before these types of events. Coaches give inspirational speeches. They rally their troops. They get them going. Ms. Fine stepped into that role, and she did it within the contours of, interesting enough, of what the school district had told her. No off-campus events, but guess what? She did it off-campus. Isn't that clever? But it was still consistent with the traditions and what had happened before within her authority. These sort of girls had been to a national competition in Orlando, Florida. Ms. Sturdivant provided a declaration that detailed all of the times when the off-campus events had occurred relating to practices, relating to team Okay, could I just interject? Council, could I just interject? I mean, it sounds like you're making an argument that Ms. Fine was insubordinate in that she did something that she was told not to do, but could you connect it up with your equal protection claim? How does it fit? I think that equal protection, and you look under Section 1983, that talks about that you subject or cause to be subjected. There's that issue, and then there's also the line of cases from the Supreme Court, including the ones that HOHALA cites in its case in the Tenth Circuit, Screws versus the United States, that talks about, you know, that if all we're worried about in 1983 actions is what the actual authority is, then we would probably exclude a lot of constitutional violations. Well, Council, I need to steer you back to the qualified immunity elements, and maybe we ought to jump to the clearly established law. District Court relied on this Ramirez case, but that case wasn't really factually analogous to this one, was it? What's your best argument for clearly established law? I believe that Ramirez versus Department of Corrections is what the court relied on and was an accurate case to rely upon as a basis for clearly established law. What if we disagree with that? Do you have a backup plan for clearly established law? It's both a backup plan, and it's also... What is the backup plan? The backup plan is that under McLaurin versus Oklahoma State Regents for Higher Education, the court did talk about an equal protection violation as part of the denial of opportunities for a student. But I would also point out, Judge, that the Tenth Circuit has supported the application of the law in employment settings as the basis for clearly established law in non-employment cases. Those are on page 50 to 51 of my brief. They include the SHA versus Tucumcari, Murrell versus School District, Black-Brown versus Flowers, Ulrey versus Bradley, and in an unpublished decision, Doe versus Hutchison. Those cases are on page 50 to 51 of the brief. I think the Ulrey case may have been missed by me, and I'm adding that to that list. But there is plenty of authority that allows you to look at the employment context and apply that. And that is very, very much consistent with the fact that Title VI of the 1964 Civil Rights Act, when it was passed, along with Title VII, and then later Title IX dealing with sex education, which some of these cases address as well, that these cases have been interpreted and are intended to be looked at in the same manner. And that has been, I believe when Title IX was passed in 1972 or so, the court, it's expressly stated it's to be looked at as Title VI of the Civil Rights Act. So it's very consistent with that tradition. And I've pointed to a case where, in Fitzgerald versus Barnstable School Committee, that says that there are plenty of cases where 1983 cases are companion or concurrent cases to Title VI cases. So I think the fact that we look at this as an employment case, the Ramirez case, that it's perfectly consistent. And I would also point out the fact that in the Tenth Circuit, in the case A.N. by and through her next friend, Ponder versus Seiling, that's an equal protection case, and it's not even has to do with race. It doesn't have to do with sex discrimination. And in that case, it used the broader Hope versus Pelzer analysis versus the White versus Pauli that the defendant said was its primary focus. But I think the primary focus has shifted. And we're talking about color of state law, which in essence is really beyond the jurisdiction of this court. I think the district court's analysis of the facts should be upheld in summary judgment. The fact that it was denied that this should be affirmed by this circuit court. Thank you, counsel. Your time is up. Mr. Goheen, you have some rebuttal time. Could I just ask you, given the development of equal protection law in the school setting, I mean, even going back to Brown versus Board of Education, why wouldn't a reasonable school district employee in your client's position know that urging students to boycott a black student is unconstitutional? You're muted. I'll never learn. I apologize. It's all right. It's the age of Zoom. I think two things, Judge. One is that there's a difference between engaging in activities that are related to the school, the deprivation of educational rights, activities taken as a teacher and what those look like, as opposed to activities taken in a private setting, as it relates to clearly established law and whether or not that would constitute a clear violation of equal protection clause under 1983. And if you look at the activities that are being involved or addressed here, all of them took place, again, after she was relieved of her duties, after they all allegedly take place, you know, not in the school setting. And so I think that's the distinction. I don't think there's any real argument by me that discrimination in the school setting based upon race is clearly prohibited by the law. I don't want to articulate that in any way, shape or form. One thing I want to, I know my time is up. I just saw it expire. I did want to cite one case because I know plaintiff's counsel has decided to rebuttal case to the court. I believe this circuit did address the Taylor versus Rios case in its recent decision, Frazier versus Evans, which is 10th Circuit case number 19-1015. And I believe that that case supports our interpretation of the Taylor and the prior decisions. All right. Thank you, counsel. I think do you mind if I, it is fine if the answer is no, but is it okay if I ask one question? Sure, of course. Mr. Goheen, I just wanted to follow up on what you just said. And in connection with your last minute of your principle argument about clearly established law, as I understand what you have told us is it was, you're not arguing that it wasn't a clearly established violation of section 1983. Your argument is what was found was not a violation of clearly established constitutional right, correct? The 14th amendment. I think it's both the 14th amendment and it is 1983 to the extent we have this issue of what- 1983 is the statutory vehicle for the, for the action. I'm not sure that I've ever seen a case where someone has said, I'm entitled to qualified immunity because it wasn't a clear violation, a clearly established violation of section 1983. Section 1983 doesn't prohibit anything. It's a statutory mechanism for a cause of action, a violation of another federal statute or another constitutional provision. Yeah, I understand what you're saying, Judge. And I do agree that it primarily relates to the underlying deprivation or action, whether it's by statute or whether it's by constitution. Okay. Just assume for the purposes of my question that the court ultimately says that you only get qualified immunity in this context, if it's a violation of clearly established constitutional protection. Okay. For purposes of my question. I think that, I think that you still run into this issue. I haven't asked my question. Oh, I'm sorry that you did. Yeah. That was, that was just an assumption for what I'm about to ask you. So what I thought I heard you say in last minute of your principle argument is under color of state law is an element of section 1983. But if I'm right, that it has to be a, the question is whether it was a clearly established violation of the 14th amendment, whether or not Ms. Fine acted under color of state law, or if it was clearly established or not, really would have nothing to do with whether she violated the 14th amendment. Am I wrong about that? It's an interesting question. I don't know that I thought about it that way. I'll be honest. I've always interpreted the analysis to require both. I've always looked at it as because 83 is the vehicle under which you can pursue a cause or claim of action against a state actor that you have to look at, even though 1983 doesn't have substantive components in a sense, it does have some threshold requirements that have to be part and parcel of the analysis, even under qualified immunity. That's how I've always viewed it. Thank you very much. And thank you, Judge Matheson for indulging me. Thank you to the court. We appreciate it. Thank you. Thank you to both counsel for your arguments. This morning, the case will be submitted and counsel at this time are excused.